**COTTONE & MOON**
EDWIN R. COTTONE, ESQ. (SBN 222689)
PRISCILLA MOON, ESQ. (SBN 220819)
5000 BIRCH STREET, SUITE 3000
NEWPORT BEACH, CA 92660
PHONE: (949) 260-2004
FACSIMILE: (949) 861-9922
EMAIL: ed@cottonemoon.com

ATTORNEYS FOR PLAINTIFFS
COSMO IMPORT & EXPORT, LLC and
OUTDOOR LIVING, INC.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COSMO IMPORT & EXPORT, LLC; and OUTDOOR LIVING, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> RELIANT GROUP & CASUALTY INSURANCE ICC, LTD.; NEAL RUBIN; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. <br><br> **UNLIMITED CIVIL** <br><br> **COMPLAINT FOR:** <br><br> **(1) FRAUD AND DECEIT** <br><br> **(2) CONVERSION** <br><br> **(3) UNJUST ENRICHMENT** <br><br> **(4) VIOLATION OF BUS. & PROF. CODE § 17200, *ET SEQ.*** <br><br> **(5) DECLARATORY RELIEF** |

1

COMPLAINT

Plaintiffs Cosmo Import & Export, LLC ("COSMO") and Outdoor Living, Inc. ("OUTDOOR LIVING") (collectively, the "COSMO PARTIES") hereby allege as follows:

## GENERAL ALLEGATIONS

1. COSMO is, and at all times relevant hereto was, a limited liability company duly organized and existing under the laws of the State of Wyoming. COSMO is, and at all times relevant hereto was, registered to conduct business in the State of California.

2. OUTDOOR LIVING is, and at all times relevant hereto was, a corporation duly organized and existing under the laws of the State of Wyoming. OUTDOOR LIVING is, and at all times relevant hereto was, registered to conduct business in the State of California.

3. Upon information and belief, Defendant Reliant Group & Casualty Insurance ICC, Ltd. ("RELIANT") is, and at all times relevant hereto was, an international insurance company duly incorporated in and operating under the laws of St. Lucia.

4. Upon information and belief, RELIANT regularly solicits and conducts a substantial amount of business in this forum State, maintains offices in the United States, and applied for and received a loan under the Paycheck Protection Program (PPP) from the United States Small Business Administration. In addition, as alleged further herein, RELIANT engaged in intentional and fraudulent acts that were expressly aimed or directly targeted at this forum State, which thereby created harm that RELIANT knew would be suffered in this forum State. Furthermore, the COSMO PARTIES' claims asserted herein all arise out of or are directly related to RELIANT's activities directed at this forum State.

5. Upon information and belief, Defendant Neal Rubin ("RUBIN") is, and at all times relevant hereto was, an individual residing and doing business in Orange County, California. Upon information and belief, RUBIN is the CEO of RELIANT.

6. Plaintiffs are unaware of the true names and capacities of the Defendants sued herein as DOES 1 through 20, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that DOES 1 through 20, inclusive, are persons, corporations or other entities which reside in and/or are doing business in this forum State; has substantial, continuous, and systematic contacts with this forum State; and/or has purposefully and intentionally directed their activities at this forum State, thereby resulting in the harm suffered in this forum State as alleged herein. Plaintiffs are further informed and believe and thereon allege that DOES 1 through 20 are and were the managerial agents, employees, predecessors, successors, joint venturers, co-conspirators, alter egos, and/or representatives of RELIANT and RUBIN and, in doing the acts alleged herein, acted with the permission, authorization, ratification, and/or consent of each of their co-Defendants. Plaintiffs will seek leave of this Court to amend this Complaint to allege the true names and capacities of the Defendants sued as DOES 1 through 20, inclusive, when the same have been ascertained.

7. Plaintiffs are informed and believe and thereon allege that each and every Defendant designated herein as a DOE Defendant is legally responsible in some manner for the acts, circumstances, and events described herein. Plaintiffs are further informed and believe and thereon allege that the Defendants sued herein as DOES 1 through 20, inclusive, are liable for Plaintiffs' damages as set forth herein.

8. Plaintiffs are informed and believe and thereon allege that at all times relevant hereto, each Defendant, including each DOE Defendant, was and is the alter ego, agent, servant, and employee of each other Defendant, and each was at all times relevant hereto acting within the course and scope of said agency and employment and with the full knowledge and consent of all other Defendants; and each of said Defendants ratified and approved the conduct of all other Defendants as each other's agent.

/ / /

## JURISDICTION AND VENUE

9. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are residents of different States or a foreign State, and because the amount in controversy (exclusive of interest and costs) exceeds the sum or value of $75,000.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims set forth in the Complaint occurred in this district. In addition, RUBIN resides in this district, and venue is proper as to a foreign entity, such as RELIANT, in any district. (*See* 28 U.S.C. § 1391(c)(3) ("[A] defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants").)

## FACTUAL ALLEGATIONS

11. Upon information and belief, RELIANT is a property and casualty insurance company licensed in St. Lucia. RELIANT is a "captive" insurer which pools all premiums paid to it by various businesses that it insures (each called a "Certificate Holder") into a common "Group Pool" that is available to pay all insurance claims. RELIANT issues to each Certificate Holder a "Certificate of Insurance" under a master insurance policy ("Group Master Policy").

12. Under certain circumstances, a Certificate Holder continuously covered under the Group Master Policy for 3 years may be entitled to a repayment of its premiums paid into the Group Pool (along with the Certificate Holder's allocable share of any investment gains from the Group Pool, and less any claims paid out from the Group Pool and other administrative expenses deducted from the Group Pool) upon termination of the Certificate Holder's insurance coverage. Such a request for cancellation of coverage and repayment of premiums ("Return of Premium Benefit") can be made without penalty after 5 years from the date of the Certificate Holder's premium payment. A request for repayment of a premium

4

COMPLAINT

payment may also be made prior to 5 years, but is subject to certain penalties (*e.g.*, premiums paid more than 3, but less than 5, years prior to the date of the requested cancellation are subject to a 9% penalty).

13. The COSMO PARTIES were Certificate Holders under the Group Master Policy, with Certificates of Insurance issued to them for various insurance coverages for the initial policy period from December 31, 2016 to December 30, 2017. The COSMO PARTIES' insurance coverages were subsequently renewed for the policy periods from December 31, 2017 to December 30, 2018, December 31, 2018 to December 30, 2019, and December 31, 2019 to December 30, 2020. The COSMO PARTIES paid all requisite premiums for these policy periods.

14. In or around September or October 2020, David Lockwood, the COSMO PARTIES' accountant, engaged in discussions (through telephone calls and emails) with RELIANT, and specifically RUBIN, regarding possible further coverage for the COSMO PARTIES. Mr. Lockwood, on behalf of the COSMO PARTIES, requested a quote for the premiums, to which RELIANT and RUBIN provided a quote of approximately $10 million for additional coverage. In addition, RELIANT, and specifically RUBIN, further provided a quote of approximately $15 million for the maximum amount of potential coverage offered.

15. At no time during the aforementioned discussions did the COSMO PARTIES, through Mr. Lockwood or otherwise, agree to obtain any further insurance coverage or pay any premium amount. However, for financial planning purposes, the COSMO PARTIES wired a total of $7 million in or around October 2020 to RELIANT (through 14 separate wire transfers of $500,000, which was the available daily limit on wire transfers for the COSMO PARTIES' bank). These funds were to be held in trust by RELIANT pending a decision by the COSMO PARTIES on the amount of insurance, if any, they were going to purchase.

16. In or around December 2020, after the COSMO PARTIES' accountant finalized financial plans for the companies, the COSMO PARTIES requested a

5

COMPLAINT

return of the aforementioned $7 million that had been sent to and held in trust by RELIANT in anticipation of a possible insurance deal, which never came to fruition.

17. Despite the COSMO PARTIES' demand for the return of the $7 million, RELIANT (specifically, RUBIN) refused to return these funds, falsely claiming that the COSMO PARTIES agreed to further coverage (namely, "Extended Reporting Periods" insurance coverage, which extended the time periods for reporting claims under the previously issued Certificates of Insurance referenced above) for a total premium cost of $14,837,424. RELIANT thus asserted that, after taking into account the $7 million that had been wired in October 2020, the COSMO PARTIES owed a remaining balance of $7,837,424.

18. RELIANT further provided the COSMO PARTIES with the certificates for the Extending Reporting Periods coverage (which were improperly issued without consent, agreement, or authority) purporting to show an "Inception Date" of October 5, 2020 and "Expiration Date" of October 5, 2023. Upon information and belief, RELIANT backdated these certificates to October 5, 2020. Prior to December 2020, the COSMO PARTIES had never seen these certificates.

19. When the COSMO PARTIES disputed that it owed $7,837,424 or that it ever agreed to Extended Reporting Periods coverage for a premium totaling $14,837,424, RELIANT declared the COSMO PARTIES to be in default and correspondingly terminated all coverages and benefits under the Certificates of Insurance.

20. As a result of RELIANT's unilateral termination, RELIANT declared that it was entitled to keep all payments that it received from the COSMO PARTIES, including (1) the $7 million sent by the COSMO PARTIES in October 2020, while having to provide no insurance coverage in return and thereby reaping a massive windfall; and (2) all previous premium payments made by the COSMO PARTIES for prior years as noted above. Moreover, because of the termination of Certificates of Insurance, RELIANT declared that the COSMO PARTIES were no longer

eligible for the Return of Premium Benefit. Therefore, the COSMO PARTIES could not obtain a repayment of any premiums that they previously paid to RELIANT. In all, the COSMO PARTIES have made payments totaling approximately $19 million to RELIANT, all of which RELIANT now claims that it is entitled to keep.

## FIRST CAUSE OF ACTION
## FRAUD AND DECEIT
## (BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS)

21. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 20 above as though fully set forth herein.

22. Plaintiffs are informed and believe and thereon allege that Defendants acted fraudulently and deceitfully in inducing Plaintiffs to send $7 million to Defendants, with such funds to be held in trust by Defendants pending the possibility of the parties reaching an insurance deal (which ultimately never happened). Prior to Plaintiffs sending such funds to Defendants, Plaintiffs never agreed to the Extended Reporting Periods insurance coverage as now claimed by Defendants or the corresponding premium in the amount $14,837,424.

23. Upon information and belief, Defendants knowingly and intentionally misled and induced Plaintiffs to send such funds (on Plaintiffs' mistaken belief that no agreement had been made regarding any insurance coverage) with the goal to hold these funds hostage in order to force Plaintiffs to either pay the entire $14,837,424 premium for the Extended Reporting Periods insurance coverage (which Plaintiffs never agreed to) or otherwise be held in default, in which case Defendants would keep all premium payments made by Plaintiffs since 2016 with no eligibility to obtain any repayment or return of such premiums.

24. Plaintiffs reasonably relied upon Defendants' representations, actions, and omissions in sending the aforementioned $7 million to Defendants. Had Plaintiffs known the truth regarding Defendants' fraudulent conduct, Plaintiffs would not have sent such funds to Defendants.

25. As a direct, proximate, and foreseeable result of Defendants' fraudulent misconduct, Plaintiffs have been damaged in an amount to be determined by proof at trial. Such damages not only include the aforementioned $7 million sent to Defendants, but also all amounts to which Plaintiffs could have recovered under the Return of Premium Benefit had Defendants not terminated all coverages and benefits under the Certificates of Insurance that had been issued to Plaintiffs.

26. Additionally, Plaintiffs are informed and believe and thereon allege that Defendants, in committing the acts alleged herein, acted willfully, maliciously, with oppression and fraud, and with the intent to cause injury to Plaintiffs, or with knowing and conscious disregard for the likelihood of same, to further Defendants' personal interests to the exclusion of the rights of Plaintiffs, and to engage in despicable conduct with willful and conscious disregard of Plaintiffs' rights.

27. Therefore, in addition to compensatory damages, Plaintiffs should be awarded punitive and/or exemplary damages sufficient to punish Defendants for engaging in the misconduct alleged herein, and to deter Defendants and others from engaging in similar misconduct in the future.

## SECOND CAUSE OF ACTION
## CONVERSION
## (BY ALL PLAINTIFFS AGAINST RELIANT AND DOES 1-20)

28. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 27 above as though fully set forth herein.

29. In or around October 2020, as directly caused by Defendants' fraudulent actions, Plaintiffs sent $7 million to Defendants, with such funds to be held in trust by Defendants pending the possibility of the parties reaching an insurance deal. However, no such agreement was ever reached, and Plaintiffs subsequently demanded a return of the aforementioned funds, which are specifically identifiable.

30. Defendants have wrongfully refused to return Plaintiffs' money.

Accordingly, Defendants have intentionally and substantially interfered with Plaintiffs' rightful personal property.

31. As a direct, proximate, and foreseeable result of Defendants' conversion of Plaintiffs' personal property, Plaintiffs have been damaged in an amount to be determined by proof at trial. Such damages not only include the aforementioned $7 million sent to Defendants, but also all amounts to which Plaintiffs could have recovered under the Return of Premium Benefit had Defendants not terminated all coverages and benefits under the Certificates of Insurance that had been issued to Plaintiffs.

32. Additionally, Plaintiffs are informed and believe and thereon allege that Defendants, in committing the acts alleged herein, acted willfully, maliciously, with oppression and fraud, and with the intent to cause injury to Plaintiffs, or with knowing and conscious disregard for the likelihood of same, to further Defendants' personal interests to the exclusion of the rights of Plaintiffs, and to engage in despicable conduct with willful and conscious disregard of Plaintiffs' rights.

33. Therefore, in addition to compensatory damages, Plaintiffs should be awarded punitive and/or exemplary damages sufficient to punish Defendants for engaging in the misconduct alleged herein, and to deter Defendants and others from engaging in similar misconduct in the future.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT
## (BY ALL PLAINTIFFS AGAINST RELIANT AND DOES 1-20)

34. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 33 above as though fully set forth herein.

35. As described above, Defendants fraudulently misled and induced Plaintiffs to send $7 million to Defendants in or around October 2020, with such funds to be held in trust by Defendants pending the possibility of the parties reaching an insurance deal. However, no such agreement was ever reached. Although

Plaintiffs demanded a return of the $7 million that they sent, Defendants have wrongfully refused to do so, falsely claiming that Plaintiffs agreed to Extended Reporting Periods insurance coverage for a total premium cost of $14,837,424, which Plaintiffs never agreed to.

36. When Plaintiffs refused to pay the $7,837,424 outstanding balance fraudulently claimed by Defendants, Defendants terminated all coverages and benefits under the Certificates of Insurance issued to Plaintiffs, while declaring that Defendants were entitled to keep all payments that they received from Plaintiffs.

37. As a direct, proximate, and foreseeable result of their wrongful and unlawful actions, Defendants have been unjustly enriched by retaining all funds paid by Plaintiffs to date, including (1) the $7 million sent by Plaintiffs in October 2020, while not providing any corresponding insurance coverage and thereby reaping a massive windfall; and (2) all previous premium payments made by Plaintiffs for prior years as noted above, for which Defendants have declared that Plaintiffs are no longer eligible for a repayment or return of any such premium payments.

38. Plaintiffs now seek the equitable remedy of restitution and/or disgorgement for all amounts by which Defendants have been wrongfully and unjustly enriched in a sum to be determined by proof at trial.

## FOURTH CAUSE OF ACTION
## VIOLATION OF BUS. & PROF. CODE § 17200, *et seq.*
## (BY ALL PLAINTIFFS AGAINST RELIANT AND DOES 1-20)

39. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 38 above as though fully set forth herein.

40. Cal. Bus. & Prof. Code § 17200, *et seq.*, prohibits unlawful competition, which includes any unlawful, deceptive, or fraudulent business practice.

41. As described above, Defendants engaged in acts and business practices that were unlawful, deceptive, and fraudulent, thereby causing Plaintiffs to send $7

million to Defendants in or around October 2020 on Plaintiffs' belief and expectation that such funds were to be held in trust by Defendants pending the possibility of the parties reaching an insurance deal. However, no such agreement was ever reached. Although Plaintiffs demanded a return of the $7 million that they sent, Defendants have wrongfully refused to do so, falsely claiming that Plaintiffs agreed to Extended Reporting Periods insurance coverage for a total premium cost of $14,837,424, which Plaintiffs never agreed to.

42. When Plaintiffs refused to pay the $7,837,424 outstanding balance fraudulently claimed by Defendants, Defendants terminated all coverages and benefits under the Certificates of Insurance issued to Plaintiffs, while declaring that Defendants were entitled to keep all payments that they received from Plaintiffs.

43. Defendants' actions were a substantial factor in causing the harm suffered by Plaintiffs. Furthermore, as a direct, proximate, and foreseeable result of their wrongful and unlawful actions, Defendants have been unjustly enriched by retaining all funds paid by Plaintiffs to date, including (1) the $7 million sent by Plaintiffs in October 2020, while not providing any corresponding insurance coverage and thereby reaping a massive windfall; and (2) all previous premium payments made by Plaintiffs for prior years as noted above, for which Defendants have declared that Plaintiffs are no longer eligible for a repayment or return of any such premium payments.

44. In accordance with Cal. Bus. & Prof. Code § 17203, Defendants should be ordered to "restore to [Plaintiffs] . . . any money or property, real or personal, which may have been acquired" by means of Defendants' unlawful, unfair, deceptive, and fraudulent actions and business practices as described above.

**FIFTH CAUSE OF ACTION**

**DECLARATORY RELIEF**

**(BY ALL PLAINTIFFS AGAINST RELIANT AND DOES 1-20)**

45. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1

through 44 above as though fully set forth herein.

46. An actual controversy has arisen and now exists between Plaintiffs and Defendants relating to whether Plaintiffs agreed to purchase Extended Reporting Periods insurance coverage as described above. Defendants falsely contend that Plaintiffs agreed to purchase such insurance coverage for a total premium cost of $14,837,424, which Plaintiffs never agreed to. Although Plaintiffs had sent $7 million to Defendants in or around October 2020, such funds were to be held in trust by Defendants pending the possibility of the parties reaching an insurance deal (which ultimately never happened). Prior to Plaintiffs sending such funds to Defendants, Plaintiffs never agreed to the Extended Reporting Periods insurance coverage as now claimed by Defendants or the corresponding premium in the amount $14,837,424.

47. Although Plaintiffs demanded a return of the $7 million, Defendants refused to do so, fraudulently claiming that Plaintiffs owed a remaining balance of $7,837,424 for the Extended Reporting Periods insurance coverage that Plaintiffs never agreed to purchase.

48. When Plaintiffs refused to pay the $7,837,424 balance fraudulently claimed by Defendants, Defendants terminated all coverages and benefits under the Certificates of Insurance issued to Plaintiffs, while declaring that Defendants were entitled to keep all payments that they received from Plaintiffs.

49. Plaintiffs now seek a judicial determination and declaration in this matter that (1) Plaintiffs did not purchase any Extended Reporting Periods insurance coverage as claimed by Defendants, and thus Plaintiffs are entitled to a return of the $7 million that they sent to Defendants in or around October 2020; and (2) Defendants' termination of all Certificates of Insurance previously issued to Plaintiffs was improper and unlawful, and thus such Certificates of Insurance, along with all rights and benefits thereunder (including, but not limited to, the Return of Premium Benefit), should be reinstated.

COMPLAINT

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

**FOR THE FIRST CAUSE OF ACTION:**
1. For damages in an amount to be determined by proof at trial;
2. For prejudgment interest at the maximum legal rate;
3. For punitive and/or exemplary damages in an amount to be determined by proof at trial;
4. For costs incurred herein; and
5. For such other and further relief as the Court deems just and proper.

**FOR THE SECOND CAUSE OF ACTION:**
1. For damages in an amount to be determined by proof at trial;
2. For prejudgment interest at the maximum legal rate;
3. For punitive and/or exemplary damages in an amount to be determined by proof at trial;
4. For costs incurred herein; and
5. For such other and further relief as the Court deems just and proper.

**FOR THE THIRD CAUSE OF ACTION:**
1. For disgorgement and/or restitution of all amounts or ill-gotten gains by which Defendants have been unjustly enriched in a sum to be determined by proof at trial;
2. For prejudgment interest at the maximum legal rate;
3. For costs incurred herein; and
4. For such other and further relief as the Court deems just and proper.

**FOR THE FOURTH CAUSE OF ACTION:**
1. For disgorgement and/or restitution of all amounts or ill-gotten gains by which Defendants have been unjustly enriched in a sum to be determined by proof at trial;
2. For prejudgment interest at the maximum legal rate;

3. For costs incurred herein; and

4. For such other and further relief as the Court deems just and proper.

**FOR THE FIFTH CAUSE OF ACTION:**

1. For a judicial declaration that: (a) Plaintiffs did not purchase any Extended Reporting Periods insurance coverage as claimed by Defendants, and thus Plaintiffs shall be entitled to a return of the $7 million that they sent to Defendants in or around October 2020; and (b) Defendants' termination of all Certificates of Insurance previously issued to Plaintiffs was improper and unlawful, and thus such Certificates of Insurance, along with all rights and benefits thereunder (including, but not limited to, the Return of Premium Benefit), shall be reinstated.

2. For costs incurred herein; and

3. For such other and further relief as the Court deems just and proper.

DATED: April 7, 2021

_____
Edwin R. Cottone, Esq.
COTTONE & MOON
*Attorneys for Plaintiffs Cosmo Import & Export, LLC; and Outdoor Living, Inc.*